Anthony L. Miscioscia, Esq.
**WHITE AND WILLIAMS LLP**
One Liberty Place, Suite 1800
1650 Market Street
Philadelphia, PA 19103
(215) 864-6356
*Attorneys for Plaintiff,*
*Interstate Fire and Casualty Company*


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERSTATE FIRE AND CASUALTY COMPANY,<br>33 West Monroe Street<br>Chicago, Illinois 60603 | JURY TRIAL DEMANDED |
| Plaintiff, | FILED ELECTRONICALLY |
| v. | |
| SCHNELLBACHER-SENDON GROUP, LLC,<br>259 Stephens Street<br>Belleville, New Jersey 07109 | CIVIL ACTION<br>No._____ |
| AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY,<br>301 E. Fourth Street<br>Cincinnati, OH, 45202 | |
| Defendants. | |


## COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY

By way of this Complaint, Interstate Fire and Casualty Company, by and through its undersigned counsel, alleges as follows:

1.      Interstate Fire and Casualty Company ("IFCC") seeks a declaration concerning the extent of coverage, if any, available to its insured, Schnellbacher-Sendon Group, LLC ("Schnellbacher"), pursuant to insurance policies issued by IFCC and by American Empire Surplus Lines Insurance Company ("American Empire") for claims relating to Schnellbacher's allegedly deficient construction work performed during the conversion of Jersey City's Beacon complex to condominiums (the "Rialto-Capital Project"), in a lawsuit styled, <u>Rialto-Capitol Condominium Association, Inc. v. Baldwin Assets Assocs. Urban renewal Company, LLC</u>, pending in the Superior Court of New Jersey, Law Division, Hudson County, Docket no. HUD-L-4994-13 (the "Rialto Action").  A true and correct copy of Rialto-Capital's Third Amended Complaint is attached hereto as Exhibit A.

2.      IFCC issued four (4) insurance policies to Schnellbacher for the policy periods January 17, 2007 to January 17, 2008 (the "2007 IFCC Policy"), January 17, 2008 to January 17, 2009 (the "2008 IFCC Policy"), January 17, 2009 to January 17, 2010 (the "2009 IFCC Policy"), and January 17, 2010 to January 17, 2011 (the "2010 IFCC Policy") (collectively "the IFCC Policies").  True and

correct copies of the relevant portions of the IFCC Policies are attached hereto as Exhibits B-E.

3. American Empire issued several insurance policies to Schnellbacher for the period March 3, 2011 to March 3, 2012, and renewed through the period May 24, 2015 to May 24, 2016 (the "American Empire Policies"). Attached as Exhibit F hereto is a February 13, 2017 letter from American Empire's counsel describing the American Empire policies.

4. IFCC initially provided Schnellbacher with a defense for the claims asserted against it in the Rialto Action pursuant to the 2010 IFCC Policy.

5. Since then, however, discovery and other information concerning the Rialto Action confirms that Schnellbacher is not entitled to coverage, including any further defense or indemnity coverage, under the IFCC Policies for several reasons.

6. The 2007, 2008, and 2009 IFCC Policies provide no coverage to Schnellbacher because Rialto-Capital's claims relate to the construction of residential condominiums, thereby implicating the Residential Construction Exclusion with Apartment Exception endorsement and the Condominium and Townhome Construction endorsement contained in those three IFCC Policies.

7. The 2010 IFCC Policy provides no coverage because the damages identified by Rialto-Capital first appeared, and Schnellbacher became aware of the

damages, by at least 2008 and 2009, thus occurring before the 2010 IFCC Policy incepted – and thus involving damage which did not occur during that policy period and implicating that Policy's Pre-Existing Damage exclusion.

8.     In light of these facts, IFCC seeks a declaration that IFCC has no duty to defend and indemnify Schnellbacher under any of the IFCC Policies.

9.     In the *alternative*, *if* this Court determines that the alleged damage did not occur and manifest prior to the 2010 IFCC Policy and also did not occur and/or manifest until after the 2010 IFCC Policy expired, then IFCC is entitled to a declaration that American Empire, a subsequent insurer of Schnellbacher, is required to contribute to Schnellbacher's defense and, thus, reimburse IFCC for American Empire's share of defense fees and costs paid by IFCC.

## THE PARTIES

10.     Plaintiff Interstate Fire and Casualty Company is a citizen of the State of Illinois, being a corporation that is organized under the laws of the State of Illinois and which maintains its principal place of business in Chicago, Illinois.

11.     Defendant Schnellbacher-Sendon Group, LLC is a citizen of the State of New Jersey, being a limited liability company organized under the laws of the State of New Jersey, having a principal place of business in Belleville, New Jersey, and whose members reside in the State of New Jersey.

12.   Defendant American Empire Surplus Lines Insurance Company is a citizen of Delaware and Ohio, being a corporation that is organized under the laws of the State of Delaware and which maintains its principal place of business in Cincinnati, Ohio.

## JURISDICTION AND VENUE

13.   This Court has original jurisdiction over this declaratory judgment action based upon 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201 *et seq.* The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00, and this action is between citizens of different States.

14.   Pursuant to 28 U.S.C. § 1391(a), venue is proper in the District of New Jersey, Newark Division, because Schnellbacher resides in the District, because a substantial part of the events giving rise to the claim occurred in the District, and because Schnellbacher and American Empire are subject to personal jurisdiction in the District at the time this action is commenced.

## THE RIALTO-CAPITAL PROJECT AND SUBSEQUENT LAWSUIT

15.   Schnellbacher is a New Jersey-based construction company that was retained by a developer to perform various construction tasks in connection with the conversion of the Beacon hospital complex into over 300 separately owned residential condominiums.

19910989v.1

16.   Schnellbacher was retained to (1) install the roof and pavers for Buildings "B" and "C" of the project, (2) supervise façade work performed by a subcontractor on Building C, and (3) act as a consultant to the developer and another construction firm in the development of organizational methods and scheduling for certain sections of façade work for Building B.

17.   Schnellbacher completed its work for the Rialto-Capital Project in or about August of 2008.

18.   After the condominium buyers took ownership of the units (and before the 2010 IFCC Policy incepted), they became aware of various issues with the building's construction, including, but not limited to, water infiltrating the façade of Buildings B and C.

19.   In 2013, Rialto-Capital filed suit (the Rialto Action) against the site's developers and contractors, including Schnellbacher.

20.   In the most recent version of Rialto-Capital's Complaint, the Third-Amended Complaint, Rialto-Capital alleged that Schnellbacher "performed façade restoration work during the construction of the Rialto-Capital Condominium Buildings."

21.   Rialto-Capital also alleged the existence several deficiencies in the contractor defendants' work, including:

> improper construction techniques in the renovation and restoration of the brick facades, improper repairs and lack of

-8-

proper repairs where needed during renovation and restoration of the facades, use of improper materials, failure to install proper code required flashings, failure to install proper code required water management system, cracked and crumbling areas of brick; and failure to properly address water infiltration through the brick facades during renovation and restoration.

22.    Rialto-Capital further alleged that the deficiencies:

have caused, and will in the future continue to cause, extensive cracking of the brick facades making the buildings vulnerable to increasing water penetration, and extensive water penetration/infiltration through and behind the brick facades of the Rialto-Capital Condominium buildings, all causing extensive consequential damage to other property including, but not limited to, mold growth throughout the Rialto-Capital buildings, and damage to the Rialto-Capital Condominium buildings' common elements, structural components of the buildings, and interior building components.

## THE IFCC POLICIES

23.    Between 2007 and 2010, IFCC issued Schnellbacher four policies that are at issue with respect to the Rialto Action.  See Exhibits B-E.

24.    Each of the IFCC Policies contains the following coverage grant:

1. Insuring Agreement.

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. ... [See Exhibits B-E.]

25.    The Policies' coverage grant further provides:

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period;

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period. [See Exhibits B-E.]

26.    The Policies further provide:

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or received notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur. [See Exhibits B-E.]

27.     The "property damage" alleged in the Rialto Action does not fall within the coverage grant for the 2009 and 2010 Policies because the "property damage" occurred and manifested, and Schnellbacher knew that the damage had begun to occur, prior to the inception of the 2009 and 2010 Policies.

28.     Furthermore, various other terms and endorsements within the Policies exclude the alleged "property damage" from coverage. See Exhibits B-E.

29.     Coverage is excluded from the 2007, 2008, and 2009 Policies under the Residential Construction Exclusion with Apartment Exception endorsements and Condominium and Townhome Construction endorsements. See Exhibits C-E.

30.     Coverage is excluded from the 2010 Policy under the Pre-Existing Damage Exclusion endorsement. See Exhibit B.

## THE 2007-2009 POLICY ENDORSEMENTS AT ISSUE

31.     The 2007, 2008 and 2009 IFCC Polices each contain a Residential Construction Exclusion with Apartment Exception endorsement and a Condominium and Townhome Construction endorsement.  See Exhibits C-E.

32.     The 2010 IFCC Policy does not contain a Residential Construction Exclusion with Apartment Exception or a Condominium and Townhome Construction endorsement.  See Exhibit B.

33.     The Residential Construction Exclusion with Apartment Exception endorsement provides:

This insurance does not apply to:

"Bodily injury", "property damage", or "personal and advertising injury" arising out of the construction of "residential properties", except "apartments". In the event any "apartment to which coverage under this policy applies is converted to a "condominium, townhome or multi-family dwelling", then coverage under this policy is excluded for any claims for "bodily injury", or "property damage", or "personal and advertising injury" , arising out of, related to, caused by, or associated with, in whole or part, the construction of said "apartments" which occur after the conversion of the "apartment" into a "condominium, townhome, or multi-family dwelling".

As used in this endorsement, the following terms have the following meanings:

1. "Residential properties" include but are not limited to single-Family dwellings, "townhomes, condominiums or multi-family dwellings".

2. "Apartment" means a unit of residential real property in a Multi-unit residential building or project where all units are owned by and titled to a single person or entity.

3. "Condominium, townhome or multi-family dwelling" means a unit of residential real property in a multi-unit residential building or project where each unity is separately owned and titled. [See Exhibits C-E.]

34. The Condominium and Townhome Construction Exclusion endorsement provides:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or related in any way to "your work" or "your product" within the "products-completed operations hazard" when "your work" or "your product" within the "products-completed operations hazard" when "your work"

-12-

or "your product" are part of or incorporated into the following:

a.  A "condominium or townhouse" or

b.  A "condominium or townhouse" project.

This exclusion does not apply if "your work" occurs or "your product" is supplied or incorporated after such "condominium or townhouse" was certified for occupancy, except if "your work" or "your product" is performed or installed after the certificate of occupancy is effective in order to repair or replace "your work" or "your product" that was completed or incorporate prior to the effective date of the certificate of occupancy.

As used in this endorsement, the term "condominium or townhouse" means a unit of residential real property in a multi-unit residential building or property where each unit is separately owned and titled.  [See Exhibits C-E.]

35.    The 2007, 2008 and 2009 IFCC Policies contain the following definitions, among others:

16.  "Products-completed operations hazard":

a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed.

\*     \*     \*

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts, or equipment furnished in connection with such work or operations.  [See Exhibits C-E.]

## THE 2010 IFCC POLICY PRE-EXISTING DAMAGE EXCLUSION

36.    The 2010 IFCC Policy includes a Pre-Existing Damage exclusion

which provides:

This insurance does not apply to

1. Any damages arising out of or related to "bodily injury" or "property damage", whether such "bodily injury" or "property damage" is known or unknown,

   (a) which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier); or

   (b) which are, or alleged to be, in the process of occurring as of the inception date of the policy (or the retroactive date of this policy, if any;  whichever    is

-14-

earlier) even if the "occurrence" continues during this policy period.

2. Any damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which are in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any; whichever is earlier). [See Exhibit B.]

## IFCC'S COVERAGE DETERMINATION AND RESERVATION OF RIGHTS

37.    On September 17, 2014, IFCC sent Schnellbacher a letter (the "September 2014 Letter"), stating that IFCC would provide Schnellbacher with a defense under the 2008 and 2010 IFCC Policies, subject to several reservations, including, but not limited to the right to deny coverage under the Known Injury or Damage Amendment to the Policies, to deny coverage under the Residential Construction and Condominium and Townhome Construction endorsements to the 2008 IFCC Policy, and to deny coverage based on the Pre-Existing Damage exclusion in the 2010 IFCC Policy.  (IFCC initially provided coverage only under the 2008 and 2010 Policies because Schnellbacher-Sendon Group, LLC, the entity named in the Rialto-Capital suit, was listed as the named insured in only these Policies. The 2007 and 2009 IFCC Policies identified the named insured as Schnellbacher-Sendon, LLC.) See Exhibits B-E.

38.    On March 31, 2015, IFCC sent Schnellbacher a letter (the "March 2015 Letter"), disclaiming coverage under the 2007, 2008 and 2009 IFCC Policies

pursuant to the Residential Construction Exclusion with Apartment Exception endorsement and the "Condominium and Townhome Construction" endorsement.

39.     The March 2015 Letter also indicated that IFCC would continue to provide Schnellbacher a defense under the 2010 IFCC Policy subject to reservations, including among others the Policy's Known Injury or Damage Amendment or the Pre-Existing Damage exclusion.

## IFCC LEARNS THAT THE ALLEGED DAMAGES OCCURRED PRIOR TO THE 2010 IFCC POLICY

40.     In 2017, IFCC obtained several documents from discovery in the Rialto Action evidencing that the alleged damage manifested prior to the inception of the 2010 Policy on January 17, 2010. See Exhibits G, H and I hereto.

41.     For example, in Schnellbacher's responses to interrogatories ("Schnellbacher's Responses") in the Rialto-Capital suit, Schnellbacher admitted that it learned of water leaks in the façade of Building C in October of 2008.  A true and correct copy of Schnellbacher's Responses is attached hereto as Exhibit G.

42.     Additionally, an email from Schnellbacher in December of 2008 ("Schnellbacher's Email") produced in discovery in the Rialto Action further evidenced the presence of leaks in Building C as of 2008.  A true and correct copy of Schnellbacher's Email is attached hereto as Exhibit H.

43.     Further, a December 31, 2009 report from Goldstein Associates Consulting Engineers, PC (the "GACE Report") noted various leaks in the façade

of Buildings B and C – as of the date of that report, which was before the 2010 IFCC Policy incepted. A true and correct copy of the GACE Report is attached hereto as Exhibit I.

44. These documents demonstrate that Schnellbacher (and others) became aware of the essential nature and scope of the damage allegedly caused by and/or relating to Schnellbacher's work at the Rialto Project, and/or had sufficient reason to know of such damage, before the 2010 Policy's inception – and thus that the 2010 IFCC Policy does not provide any coverage for the claims and damages alleged in the Rialto Action.

45. Upon information and belief, Schnellbacher does not agree that the damages alleged in the Rialto Action manifested prior to the 2010 IFCC Policy's policy period and thus are not covered by the 2010 IFCC Policy.

46. In light of the preceding, an actual, justiciable controversy exists between the parties concerning their respective rights and obligations, if any, under the IFCC Policies concerning the Rialto-Capital suit.

**THE AMERICAN EMPIRE POLICIES**

47. In addition to IFCC, American Empire also issued several insurance policies that were implicated by the Rialto-Capital suit.

48. IFCC does not have a copy of the American Empire Policies, but information concerning the content of these policies is reflected in the reservation

of rights and denial letters American Empire sent to Schnellbacher. True and correct copies of the American Empire letters are attached here to as Exhibits F and J.

49.     American Empire issued insurance policies effective for the periods: March 3, 2011- May 24, 2012 (the "American Empire 2011 Policy); May 24, 2012- May 24, 2013 (the "American Empire 2012 Policy"); May 24, 2013- May 24, 2014 (the "American Empire 2013 Policy"); May 24, 2014- May 24, 2015 (the "American Empire 2014 Policy"); and May 24, 2015- May 24, 2016 (the "American Empire 2015 Policy") (collectively, the "American Empire Policies").

50.     Each of the American Empire Policies contained the following coverage grant:

1.  Insuring Agreement.

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. [See Exhibits F, J.]

51.     The American Empire Policies further provided:

    b.  This insurance applies to "bodily injury" and "property damage" only if:

-18-

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2) The "bodily injury" or "property damage" occurs during the policy period. [See Exhibits F, J.]

52.   On May 20, 2016, American Empire joined IFCC in its defense of Schnellbacher under the 2011, 2012 and 2013 American Empire Policies.

53.   At the time, American Empire disclaimed coverage under the 2014 and 2015 American Empire Policies because it alleged the damages were manifested and were known prior to the inception of the American Empire policies. See Exhibit J.

54.   Almost a year later, on February 13, 2017, American Empire informed Schnellbacher that it would be disclaiming coverage, ceasing its contribution to Schnellbacher's defense, under the 2011, 2012 and 2013 American Empire Policies based on American Empire's determination that the damage alleged by Rialto-Capital had also manifested prior to those policy periods. See Exhibit F.

55.   In light of the preceding, and to the extent that the Court were to find the damages at issue did not manifest prior to the 2010 IFCC Policy's policy period, then an actual, justiciable controversy exists between the parties concerning their respective rights and obligations, if any, under the IFCC and the American Empire Policies concerning the Rialto-Capital suit.

19910989v.1

## COUNT I

**For Declaratory Judgment That IFCC Owes No Defense or Indemnity
To Schnellbacher For The Rialto Action
Under the 2007, 2008 and 2009 IFCC Policies**

56.     IFCC restates the allegations set forth in paragraphs 1 through 55 of this Complaint and incorporates them by reference herein.

57.     Pursuant to the terms, provisions, definitions, exclusions, conditions, and limitations of the IFCC Policies, the Rialto Action does not allege that Schnellbacher has any liability for "property damage" (or "bodily injury") caused by an "occurrence" to which the 2007, 2008 or 2009 IFCC Policies apply.

58.     Some, if not all, of the damage alleged does not involve "property damage" caused by an "occurrence" as those terms are defined in the 2007, 2008 and 2009 IFCC Policies.

59.     Coverage also does not exist under one or more of those Policies (i.e., the 2007, 2008 and/or 2009 IFCC Policies) to the extent that any such damage or injury did not occur during the respective policy periods.

60.     Further, even if the Rialto Action is found to potentially allege "property damage" caused by an "occurrence" and which damage occurred during the policy period of one or more of the 2007, 2008 and/or 2009 IFCC Policies, IFCC still has no duty to defend or indemnify Schnellbacher under those policies because Schnellbacher's liability for the Rialto-Capital suit is excluded from

-20-

coverage under the Residential Construction Exclusion with Apartment Exception endorsement and the Condominium and Townhome Construction endorsement to the 2007, 2008 and 2009 IFCC Policies.

61.     The Residential Construction Exclusion with Apartment Exception exclusion applies because Rialto-Capital's alleged "property damage" arose from Schnellbacher's work on the façade during the conversion of the building into "residential properties" as defined by the 2007, 2008 and 2009 IFCC Policies.

62.     The Rialto-Capital Project qualifies as "residential properties" because it involves the construction of "townhomes, condominiums or multi-family dwellings" further defined by the IFCC Policies as "residential property in a multi-unit residential building or project where each unit is separately owned and titled."

63.     The Condominium and Townhome Construction exclusion applies because the alleged liability arose out of, and related to, work done by, and on behalf of, Schnellbacher that falls within the "products-completed operations hazard" and was incorporated into the condominium project.

64.     The alleged liability falls within the "products-completed operations hazard" because it occurred away from the premises owned or rented by Schnellbacher, arises from work done by and on behalf of Schnellbacher, and

Schnellbacher had completed all work called for in the contract at the time the damage occurred.

**WHEREFORE**, Plaintiff, Interstate Fire and Casually Company, respectfully requests that the Court:

A. Declare that IFCC has no duty to defend or indemnify Schnellbacher under the 2007, 2008 and 2009 IFCC Policies; and

B. Grant IFCC such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT II

**For Declaratory Judgment That IFCC Owes No Defense or Indemnity
To Schnellbacher For The Rialto Action
Under the 2009 and 2010 IFCC Policies**

65.     IFCC restates the allegations set forth in paragraphs 1 through 64 of this Complaint and incorporates them by reference herein.

66.     Pursuant to the terms, provisions, definitions, exclusions, conditions, and limitations of the Policies, Schnellbacher's liability for the Rialto Action is not covered by the coverage grant of the 2009 and 2010 Policies and is further excluded from coverage under the "Pre-Existing Damage" exclusion to the 2010 IFCC Policy.

67.     Under the 2009 and 2010 IFCC Policies (as well as the other IFCC Policies), coverage applies to, among things and subject to all other policy terms,

-22-

Case 2:17-cv-11305-JLL-CLW   Document 1   Filed 11/06/17   Page 21 of 25 PageID: 21

exclusions etc., certain "property damage" that occurs during the policy period and which was not known to Schnellbacher prior to policy period.

68.     The Pre-Existing Damage exclusion in the 2010 IFCC Policy further excludes coverage for "property damage" that first occurred prior to the inception date of the policy.

69.     Here, discovery in the Rialto Action has confirmed that any "property damage" which may be the responsibility of Schnellbacher occurred and manifested prior to the 2009 and 2010 IFCC Policies' policy periods.

70.     Schnellbacher's Responses, Schnellbacher's Email, and the GACE Report evidence that the leaks in Building B and C that form the basis for Rialto-Capital's claims against Schnellbacher occurred and manifested prior to January 17, 2009 – the date on which the 2009 IFCC Policy incepted.

71.     Schnellbacher also became aware of the essential nature and scope of the property damage, or had sufficient reason to know of it, before either the 2009 IFCC Policy or the 2010 IFCC Policy incepted.

72.     As such, IFCC has no duty to defend or indemnify Schnellbacher under the 2009 and 2010 IFCC Policies.   See Air Master & Cooling, Inc. v. Selective Ins. Co. of Am., No. A-5415-15T3, 2017 N.J. Super. LEXIS 144 (App. Div. Oct. 10, 2017).

19910989v.1

**WHEREFORE**, Plaintiff, Interstate Fire and Casually Company, respectfully requests that the Court:

    A. Declare that IFCC has no duty to defend or indemnify Schnellbacher under the 2009 and 2010 IFCC Policies; and

    B. Grant IFCC such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT III

**In the *Alternative*, For Declaratory Judgment That American Empire Must Share in the Defense and Indemnity of Schnellbacher**

73.    IFCC restates the allegations set forth in paragraphs 1 through 72 of this Complaint and incorporates them by reference herein.

74.    Pursuant to the terms, provisions, definitions, exclusions, conditions, and limitations of the American Empire Policies, American Empire is required to provide Schnellbacher with insurance coverage for "property damage" caused by an "occurrence" and which damage occurs during an American Empire policy period (and is not otherwise excluded).

75.    *In the event that* this Court finds that Schnellbacher first became aware, or had sufficient reason to know of, the property damage during (or after) one or more of the American Empire policy periods, IFCC is entitled to a declaration that American Empire must contribute to Schnellbacher's defense.

19910989v.1

**WHEREFORE**, Plaintiff, Interstate Fire and Casually Company, respectfully requests that, *in the event that* this Court finds that Schnellbacher first became aware, or had sufficient reason to know of, the property damage during (or after) one or more of the American Empire policy periods, the Court:

    A. Declare that American Empire has a duty to contribute to the defense related to Rialto-Capital's suit against Schnellbacher;

    B. Declare that American Empire must reimburse IFCC for American Empire's allocated share of defense costs paid by IFCC; and

    C. Grant IFCC such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT IV

**In the *Alternative*, For Declaratory Judgment Declaring The Limitations Of IFCC Obligation, If Any, to Defend And/Or Indemnify Schnellbacher**

    76.    IFCC restates the allegations set forth in paragraphs 1 through 75 of this Complaint and incorporates them by reference herein.

    77.    In the *alternative* should this Court find that IFCC had a duty to defend Schnellbacher under any IFCC Policy, then IFCC requests that this Court enter an Order declaring the extent of IFCC's duty, identifying any other persons or entities that are required to share in such defense, and identifying what portions of the damages sought by Rialto-Capital, if any, are potentially covered by any

IFCC Policy and which such damages are not covered by, and thus not subject to indemnification under, any IFCC Policy.

78.     The IFCC Policies contain a number of terms, provisions, definitions, exclusions, conditions and limitations which detail the extent of coverage provided under the IFCC policies.

79.     Among other things, the IFCC Policies only provide coverage for "property damage" caused by an "occurrence" and for such damage that occurs during an IFCC Policy policy period.

80.     The IFCC Policies also contain a number of exclusions – including both those cited above and additional exclusions detailed in the IFCC Policies, including but not limited to an Expected or Intended Injury exclusion, a Contractual Liability exclusion, a Damage to Property exclusion, a Damage to Your Product exclusion, a Damage to Your Work exclusion, a Damage to Impaired Property or Property Not Physically Injured exclusion, a Fungi or Bacteria exclusion, and a Construction Management Errors and Omissions exclusion, among others.

81.     In the event that this Court finds that one or more of the IFCC Policies may provide defense or indemnity to Schnellbacher, IFCC then requests that the Court declare the appropriate scope and limitation to any such coverage.

**WHEREFORE**, Plaintiff, Interstate Fire and Casually Company, respectfully requests that, *in the event that* this Court finds that one or more of the IFCC Policies may provide defense or indemnity to Schnellbacher, the Court:

    A. Declare the appropriate scope and limitation to any such coverage and, in doing so, identify what damages alleged by Rialto-Capital may be covered by an IFCC Policy and which such damages are not covered by any IFCC Policy; and

    B. Grant IFCC such other and further relief as may be necessary and appropriate under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a jury trial as to all issues so triable as a matter of right, pursuant to Rule 38(b)(1) of the Federal Rules of Civil Procedure.


BY: /s/ Anthony L. Miscioscia

        Anthony L. Miscioscia
        **WHITE AND WILLIAMS LLP**
        One Liberty Place, Suite 1650
        1650 Market Street
        Philadelphia, PA 19103
        (215)864-6356
        *Attorneys for Plaintiff*

Dated: November 6, 2017

19910989v.1